**Lockman v. Easton Hospital**

C.P. of Northampton County, no. 1997-C-1795.

*Michael A. Snover,* for plaintiff.
*Kevin H. Wright* and *Mark R. Zolfaghari,* for defendants Javia and Subhashchandra Javia M.D., P.C.
*Gregory S. Nesbitt,* for defendants Najmi and Easton Cardiovascular Associates P.C.
*Candy Barr Heimbach,* for defendant Easton Hospital.

McFADDEN, *J.,* December 9, 2004—Presently before the court is a motion by plaintiff for reconsideration of orders precluding plaintiff's experts, Robert Sklaroff M.D. and Thomas Sharon R.N. Also before this court are two separate motions filed by defendants. Defendants Moosa A. Najmi M.D. and Easton Cardiovascular Associates filed a motion in limine to preclude the testimony of plaintiff's experts, Sheldon Margulies M.D. and Eric W. Fine M.D. Defendants Subhashchandra Javia M.D. and Subhashchandra Javia M.D., P.C. filed a motion in

limine to preclude the testimony of plaintiff's expert, Sheldon Margulies M.D.

The above motions were assigned to the Honorable F.P. Kimberly McFadden from the October 5, 2004 argument list. Following oral argument and review of the motions and memoranda submitted in relation thereto, this matter is now ready for disposition.

## FACTUAL/PROCEDURAL HISTORY

This case arises out of a medical malpractice action brought by plaintiff, Dorothy Lockman, individually and on behalf of plaintiff's decedent, Michael Lockman. On or about November 24, 1995, the plaintiff's decedent, Michael Lockman, suddenly collapsed at his home. He was transported by ambulance to the Easton Hospital Emergency Room. Decedent then went into ventricular fibrillation, was resuscitated and intubated. Despite this, however, decedent fell into a coma. An EEG determined that decedent had suffered some brain stem dysfunction. Decedent was admitted to the hospital on a respirator and intubated. He was under the care of Moosa Najmi M.D., who was the attending physician and assigned to decedent's case from the on-call rotation.

On or about November 28, 1995, plaintiff, while in the waiting room of the ICU, suffered a syncopal episode. She was admitted to Easton Hospital and entered under the care of Moosa Najmi M.D. Dr. Najmi requested a psychiatric consult from Subhashchandra Javia M.D. regarding plaintiff's condition. Dr. Javia performed the consultation and reported that plaintiff suffered from major depression, adjustment disorder and marital conflict.

On or about November 29, 1995, decedent was taken off life support. He was pronounced dead at approximately 2:40 p.m. on November 30, 1995.

Plaintiff filed a complaint against the above defendants on or about December 15, 1997. A third and final complaint was filed on January 14, 1999. In the third amended complaint, plaintiff alleges that the defendants were negligent in their care and treatment of plaintiff and decedent.

On March 20, 2002, the Medical Care Liability & Reduction Act (MCARE Act) was signed into law. The provisions of the MCARE Act were activated within certain time periods, as designated by the MCARE Act. Section 512, addressing qualifications for expert testimony, became effective on May 19, 2002.

On June 28, 2002, this court entered an order granting defendants' motion for summary judgment. Then on July 2, 2002, this court certified this matter for immediate appeal, and on February 4, 2003, the Superior Court quashed the appeal pursuant to the request of defendant, Easton Hospital.

Plaintiff filed a motion to determine expert requirements to ascertain whether her experts would be precluded from testifying under the MCARE Act. At the time, plaintiff had already identified two experts, Sheldon Margulies M.D., a neurologist, and Eric W. Fine M.D., a consultative forensic psychiatrist.

In an opinion and order dated July 9, 2003, this court held that the MCARE Act, 40 P.S. §1303.512, was applicable to the instant action and was constitutional. This court, therefore, afforded plaintiff until October 1, 2003

to secure new experts that complied with the MCARE Act and afforded defendants until November 11, 2003 to secure their experts.

On or about October 1, 2003, plaintiff withdrew her original two experts and identified two new experts, Robert B. Sklaroff M.D., an internist/oncologist/hemotologist and Thomas A. Sharon, a registered nurse.

Defendants filed a motion in limine requesting that these experts be precluded from testifying against defendants. In an opinion and order dated January 8, 2004, this court granted defendants' motion in limine and precluded the testimony of Dr. Sklaroff and Nurse Sharon. In its opinion, this court stated that the purpose of the extension of time was to allow the plaintiff to produce new expert reports, regarding the issues already presented in the original expert reports, that would comply with the MCARE Act. The court was allowing the plaintiff time, if she determined her original experts were not qualified under the MCARE Act, to obtain experts who were qualified. The court was not granting plaintiff an opportunity to re-open the case and present new experts with new qualifications to raise entirely different issues than those presented by the current experts. This court then granted plaintiff an additional 60 days to produce expert reports that were in compliance with the MCARE Act and were in accordance with the issues and causes of action raised by plaintiff's initial expert reports, so as not to permit plaintiff to raise new theories of liability.

Plaintiff then filed a motion for reconsideration, arguing that the January 8, 2004 court order allegedly precluded plaintiff from introducing any new expert tes-

timony or reports. This court granted the motion for reconsideration on January 23, 2004 and then issued a clarification opinion on February 4, 2004. In the clarification opinion, this court reiterated that plaintiff could seek additional expert testimony, however any new experts identified by plaintiff were limited to the issues discussed by plaintiff's original experts. Furthermore, this court granted plaintiff an additional 120 days to produce new experts.

Plaintiff then filed a petition for interlocutory appeal. On February 27, 2004, this court, again, granted plaintiffs' motion for reconsideration. In an opinion and order dated March 1, 2004, this court reaffirmed that Dr. Sklaroff and Nurse Sharon were precluded from testifying. This court then afforded plaintiff an additional 120 days to produce expert reports against defendant that were in compliance with the MCARE Act and the issues and causes of action raised by the plaintiff's initial expert reports prepared by Dr. Margulies and Dr. Fine.

Plaintiff then sought reconsideration of the March 1, 2004 order of court and also certification for an immediate appeal regarding the March 1, 2004 order of court. Plaintiff alleged that by excluding the new experts, the court is in reality placing a sanction order upon plaintiff and, therefore, defendants should be required to show prejudice. This court granted reconsideration of its March 1, 2004 order on March 30, 2004. Then, on April 8, 2004, this court issued its opinion and order, which determined that no sanction was imposed on plaintiff, and, therefore, denied plaintiff's motion for reconsideration. This court reiterated that plaintiff must submit expert reports

that qualify under the MCARE Act and that raise the same issues and causes of action as plaintiff's original experts. This court also denied plaintiff's petition to take interlocutory appeal. The Superior Court denied plaintiff's petition for review on May 28, 2004.

Plaintiff now seeks to reintroduce the expert testimony of Dr. Margulies and Dr. Fine, as well as reconsider the use of Dr. Sklaroff and Nurse Sharon as experts. Defendants seek to preclude the testimony of Dr. Margulies and Dr. Fine, as well as uphold this court's earlier decision precluding Dr. Sklaroff and Nurse Sharon.

We will discuss each in turn.

## STATUTE

*"40 P.S. §1303.512. Expert qualifications.*

*"(a) General rule.*—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

*"(b) Medical testimony.*—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

"(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia

"(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

"Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

"*(c) Standard of care.*—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

"(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

"(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

"(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

"*(d) Care outside specialty.*—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

"(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

"(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

*"(e) Otherwise adequate training, experience and knowledge.*—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period."

## DISCUSSION

### 1. *Plaintiff's Motion for Reconsideration of Orders Precluding the Testimony of Plaintiff's Experts, Dr. Sklaroff and Nurse Sharon*

At issue in this case is whether this court should reconsider its previous decision precluding Dr. Sklaroff and Nurse Sharon from testifying.

It shall be noted that, according to the Superior Court in *Herbert v. Parkview Hospital,* 854 A.2d 1285, 1292 (Pa. Super. 2004), based "on its plain language, the MCARE Act reflects the legislature's preference for the testimony of expert witnesses who share the relevant area of expertise with the defendant physician." The Superior Court further stated that the trial court has discretion in determining whether to admit testimony from a doctor with expertise in another specialty that "has a similar standard of care *for the specific care at issue.*" *Id.* at 1294. (emphasis in original) Plaintiff contends that this court should have considered whether the preclusion of Dr. Sklaroff's and Nurse Sharon's testimony was, in effect,

a sanction order and, therefore, prejudice to the defendant should have been considered.

Plaintiff argues that the decision in *Steinfurth v. LaManna* supports this conclusion. See 404 Pa. Super. 384, 590 A.2d 1286 (1991). In *Steinfurth,* the Superior Court considered an appeal from the trial court's decision granting the defendant's motion for summary judgment. The plaintiffs in that case failed to submit a timely expert report. Thereafter, the defendants filed a motion for summary judgment, which was granted. The Superior Court concluded that summary judgment was premised upon a sanction order precluding the plaintiffs from introducing expert testimony. Therefore, the court held that the sanction was disproportionate to the default, which was the untimely report. *Id.* at 391, 590 A.2d at 1289.

This case, however, is factually different than *Steinfurth.* After deciding that the MCARE Act was applicable to the instant case, this court, in its order on July 9, 2003, afforded plaintiff until October 1, 2003 to secure new experts that complied with the MCARE Act, if she determined that her current experts, Dr. Margulies and Dr. Fine, were not qualified under the MCARE Act. On October 1, 2003, plaintiff withdrew her original experts and identified Dr. Sklaroff and Nurse Sharon. Defendants then filed a motion in limine to preclude plaintiff's new experts, because the new experts were raising additional issues and causes of action not raised by the original experts. After numerous opinions and orders, this court issued an order on March 1, 2004 granting defendants' motion in limine and precluding plaintiff's experts, Dr. Sklaroff and Nurse Sharon. In the March 1, 2004 order,

this court granted plaintiff an additional 120 days to produce expert reports that were to be in compliance with both the MCARE Act and the issues and causes of actions raised by the original expert reports prepared by Sheldon Margulies M.D. and Eric W. Fine M.D.

Thus, plaintiff's reliance on *Steinfurth* is misplaced. Plaintiff, unlike the plaintiff in *Steinfurth,* was given additional time, on numerous occasions, to introduce expert testimony that is both in compliance with the MCARE Act and raises the same issues and causes of action as raised by plaintiff's original experts. Therefore, because this court has given plaintiff additional time to secure experts, this court has not imposed a sanction order on plaintiff. Because this court did not impose a sanction on plaintiff, prejudice to the defendants need not be considered.

Plaintiff also relies on *Herbert v. Parkview Hospital,* in her motion for reconsideration, asserting that the decision in *Herbert* stands for the proposition that a plaintiff's expert does not necessarily have to be of the same subspecialty as the defendant physician if the criticized care at issue is outside of the defendant's subspecialty. Rather, an expert in a different subspecialty may testify as to the standard of care at issue as of the time of the alleged breach. We do not disagree with this proposition. However, as we discussed above, this court precluded Dr. Sklaroff and Nurse Sharon because they raised issues and causes of action different than those raised by plaintiff's original experts. Therefore, we hold that plaintiff's motion for reconsideration of the orders precluding the testimony of Dr. Sklaroff and Nurse Sharon is denied.

To allow this testimony would, in effect, grant plaintiff an opportunity to re-evaluate her case at this late juncture to present opinions not previously offered.

## 2. *Clarification of July 9, 2003 Order*

Defendants, Moosa Najmi and Easton Cardiovascular Associates, ask for clarification of this court's July 9, 2003 order, which stated that MCARE is applicable to this case. Defendants assert that although this order does not explicitly prohibit the testimony of Dr. Margulies and Dr. Fine, it does prohibit their testimony by implication.

The July 9, 2003 order merely granted plaintiff until October 1, 2003 to secure experts that complied with the MCARE Act. This order was qualified by this court's order on January 8, 2004, which provided that if plaintiff determined her original experts were not qualified under the MCARE Act, she would be granted additional time to obtain experts who were qualified.

Thus, rather than disposing of this issue based on the July 9, 2003 order without the January 8, 2004 order, we will address each of defendants' contentions in turn.

## 3. *Defendants', Moosa Najmi and Easton Cardiovascular Associates, Motion in Limine To Preclude Plaintiff's Experts, Dr. Margulies and Dr. Fine*

Defendants' motion to preclude plaintiffs experts is based on the MCARE Act, quoted at length above. Specifically, defendants assert that because Dr. Margulies, a neurologist, does not practice in the same subspecialty

as defendant Najmi, a cardiologist, Dr. Margulies should be precluded from testifying. Furthermore, defendants assert that Dr. Fine, a psychiatrist, should be precluded from testifying against defendant Najmi.

Plaintiff has asserted in response that the "subspecialty requirement only applies if the care being criticized is care involving the special training and practice for which the subspecialty was created." (Plaintiff's brief in opposition to defendants' motion to preclude at 6.)

It is not disputed that Dr. Margulies and Dr. Fine are not in the same subspecialty as Dr. Najmi. However, as plaintiff asserts in her response brief, the care at issue does not involve the subspecialty of cardiology, which is the subspecialty of defendant Najmi. Rather, plaintiff asserts that the care at issue was the decision to terminate life support and the manner of doing so.

Furthermore, plaintiff asserts that the standard of care of a neurologist or a psychiatrist is no different from an internist's standard of care when engaging in the process for making end of life decisions. Plaintiff relies on *Herbert v. Parkview,* 854 A.2d 1285 (Pa. Super. 2004), to support this proposition. In *Herbert,* an internist was qualified to testify as an expert against the defendant, a nephrologist. The defendant in *Herbert* was to prepare the patient/decedent for dialysis treatment. The defendant did not examine the decedent's mouth and throat, although it had been noted earlier by an intake nurse that the decedent had been grasping at his throat and appeared to be having trouble breathing. See *id.* at 1286-87. The decedent later was found to have a large piece of steak in his throat. The steak was removed, however, decedent

developed an infection and later died. For trial, the plaintiff introduced the testimony of an internal medicine physician. The defendant nephrologist argued that the plaintiff should present the testimony of a nephrologist pursuant to the MCARE Act. The Superior Court ruled, however, that the specific care at issue as of the time of the alleged breach was not based on the subspecialty of nephrology, but rather the issue was whether the defendant should have diagnosed and treated the decedent's respiratory problems. Therefore, plaintiff's expert was permitted to testify, "based on his expertise in internal medicine and critical care, to the standard of care applicable to a physician with internal medicine and critical care experience who encounters a patient under such conditions." *Id.* at 1294.

Thus, based on the ruling in *Herbert,* plaintiff asserts that "although Michael Lockman went to the hospital originally for cardiac arrest, the care being criticized has nothing to do with the subspecialty of cardiology . . . . It is therefore clear that there is no basis to exclude the testimony of Drs. Margulies or Fine, merely because they are not in the subspecialty of cardiology. Clearly, the plaintiffs' experts are familiar with end of life issues and how they are to be handled. The standard of care is not different on this issue, and therefore, with respect to the specific care at issue, the plaintiffs' experts are competent to express an opinion on the standard of care." Plaintiff's brief in opposition to defendants' motion to preclude at 10.

Defendants have not offered any arguments in response as to why plaintiff's experts, Dr. Margulies and Dr. Fine,

cannot testify as to the standard of care regarding the care that plaintiff asserts was at issue at the time of the alleged breach. Therefore, we must deny defendants' motion to preclude plaintiff's expert testimony as it pertains to Dr. Najmi and Easton Cardiovascular Associates.

### 4. *Defendant Subhashchandra Javia's Motion in Limine To Preclude Plaintiff's Expert, Dr. Margulies*

Defendant, Subhashchandra Javia, has also filed a motion in limine to preclude the testimony of plaintiff's expert, Dr. Margulies, from testifying as to the standard of care owed by Dr. Javia.

Defendant asserts in his motion that Dr. Margulies, a neurologist, is in an entirely different medical field than defendant, a psychiatrist, and that Dr. Margulies and Dr. Javia are not approved by the same or similar medical boards. Furthermore, defendant asserts that there is no evidence that Dr. Margulies is in a subspecialty with a substantially similar standard of care for the specific care at issue.

Plaintiff has not responded to defendant's motion, and therefore, defendant's motion in limine to preclude plaintiff's expert, Dr. Margulies, from testifying as to the standard of care owed by Dr. Javia is granted.

### ORDER

And now, December 9, 2004, upon consideration of plaintiff's motion to reconsideration of orders precluding plaintiff's experts, and defendants' motions in limine

to preclude plaintiff's experts, it is hereby ordered and decreed that:

(1) Plaintiff's motion for reconsideration of orders precluding plaintiff's experts, Dr. Sklaroff and Nurse Sharon, is hereby denied.

(2) Defendants', Moosa A. Najmi M.D. and Easton Cardiovascular Associates, motion in limine to preclude the testimony of plaintiff's expert, Dr. Margulies, is hereby denied.

(3) Defendants', Moosa A. Najmi M.D. and Easton Cardiovascular Associates, motion in limine to preclude the testimony of plaintiff's expert, Dr. Fine, is hereby denied.

(4) Defendants', Subhashchandra Javia M.D., and Subhashchandra Javia M.D., P.C., motion in limine to preclude the testimony of plaintiff's expert, Dr. Margulies, is hereby granted.

(5) This matter is placed on the pretrial list of February 9, 2005 at 8:30 a.m. in courtroom 6.